Good morning. May it please the Court. My name is Jacob Ewart. I am here today on behalf of the appellant, Mr. Shallowhorn. I would like to save three minutes for rebuttal. All right. The district court's decision that Mr. Shallowhorn's complaint fails to state a claim for which relief may be granted should be reversed, because Mr. Shallowhorn has a right to have a relationship with his minor children, and this right survives incarceration. The prison regulation at issue is not reasonably related to its legitimate penalegical interest and therefore cannot legally violate Mr. Shallowhorn's right, and Mr. Shallowhorn's complaint alleges that he is entitled to relief for violation of this right. The regulation that you're complaining about says what? The regulation is Section 3173, and I don't have it in front of me. Well, what does it bar? You don't have to read it. It bars prisoners who have been convicted of certain crimes from having contact visits with their minor children, with any minor children, unless the prison officials allow it. So the prisoners are still entitled to noncontact visits under the regulation. Is that correct? That is correct. Under the 2005 amendment to the regulation. So you're also, though, complaining about the fact that for six months he didn't have any visits, correct? Correct. And there's a dispute for which it is, whether it is six months or eight months. The district court decided that, or in its decision, said that it was eight months. I think there's a factual dispute on that. I'm not sure it matters. Well, it's basically, in my understanding, it's undisputed that your client was convicted of three counts of murder, and one of the counts involved a 16-year-old victim. Is that correct? That's correct, Your Honor. All right. And so under the regulation, he fits. You're not disputing that he fits under the regulation as there was a minor victim and it was a 187, which is a murder, correct? That is correct, Your Honor. All right. How do you get around the holding in Gerber v. Hickman that the right to physical intimacy does not survive imprisonment? The right at issue here is not the right to physical intimacy. It is the right for a parent to have a relationship with his minor children. This right at issue here is not the right to physical intimacy. Well, but he wants to touch them, and, you know, that's what he's saying, because he has he's having noncontact visits right now, correct? Correct. But he wants to be able to touch them, hug them, do all of those things. So that, I don't know. That sounds like it's physical intimacy to me. It's not a conjugal visit, but you don't have conjugal visits with your children. Well, I believe the right of a parent to have a relationship with their minor children requires contact, and I'd like to acknowledge that. Counsel, excuse me. That's the case. Sorry. Go ahead. Thank you. I mean, the Supreme Court itself has been explicit on the proposition that there is no constitutional right to contact visits, and how do you get around that basic proposition in serving the position that you do? Well, we are not arguing for contact visits with anyone. We're not arguing for the general right to have contact visits with any visitor. The right at issue here is the right to have a relationship with his minor children. I would like to point this Court to its decision in United States v. Wolfchild, where the Court was presented with a situation where a father on parole could talk to his children and could see them in person, but he could not come in contact with them, and without prior written approval from the parole officer. And this Court said that the parole condition preventing contact visits violated the father's right to have a relationship with his minor children to such a degree that the parole condition was not valid. But that's a parole. Parole is different than when you're actually locked up in the prison walls. It's an extension of your prison. I agree. And I analogize the case in U.S. v. Wolfchild for the proposition that the right of a parent to have a relationship with their child requires this right of contact. In Wolfchild, that was the right at issue, and if that right did not require contact, then that right would not have been violated by the parole condition. Well, I thought the Supreme Court held in, what was it, Rutherford v. Block, that there are security reasons why the prison can deny contact visits. What do you say about that? The penalogical objective in that case of the prison regulation was for the security of the prison. The penalogical interest of the regulation at this case, we can only guess at this time because there has not been findings of fact, but from the public record, it appears that it is for the protection of minor children. It is not for the security of the prison. Well, except there's really serious crimes listed there. Some it's for that, I mean, apparently children were being molested in the contact visits, and so, but three counts of murder, you know, doesn't make you a lightweight in prison. It's not like he was in there for a nonviolent crime. Correct. He was in there for three counts of murder against nonfamily members. And this goes to the Turner test, which the Supreme Court set forth in Turner v. Safely, which said that the prison regulation has to be reasonably related to legitimate penalogical interest. And this Court reasoned in U.S. v. Wolfchild that a parent's crime against a nonfamily member child has no reasonable relation to the parent's propensity for danger to their own minor children. And I'm referring back to the Turner test, but I would like to point this Court to its footnote in Dunleavy-Castro that said at the 12B6 stage, which is basically what we're at here, this case was screened according to the PLRA, that the Turner test is not appropriate, that it should be remanded back to the district court for findings of fact. The Turner test requires four prongs, and each one of those prongs are fact-intensive. But, counsel, the – I mean, your argument that there has to be an individualized determination seems premised on the proposition that there is, in this situation where you're talking about a parent and a child, that there is a constitutional right for the parent to have contact visits with the child. And I think, as we've already suggested, the Supreme Court, although not specifically addressing parent-child, did say that there is no constitutional right to contact visits. Given that premise, I don't know how you can argue that there then has to be some kind of individualized determination to avoid a constitutional problem. The – a prison regulation can violate many different rights. But just because it can legally violate one right does not mean it can legally violate another right. So the right of contact visits to anyone is a separate right than a parent's right to have a relationship with their minor children. If this regulation can violate a prisoner's right to have contact visits with anyone, that does not mean it can violate a separate right, which is a parent's right to have a relationship with their minor children. Life changes when you go to prison. I have a lot of rights that people in prison don't have. And so it seems to me that in order to – it would seem to me in order for you to prevail, two things would have to happen. First, when the prison – right now, the way – the prison immediately categorizes people that fall in certain categories, that have certain violent crimes. They don't get any visitation that – when they get there. And they don't individually look at every single record. They look at their charges, and they put them in a certain category. It seems to me that you want us to say that the prison has to, when they first come in, look at everyone individually, and they can't categorize them by their crime. And then the next step is they did ultimately say, okay, you get non-contact visits, but we would have to find that a parent has, even though they're in prison, has a right to contact visits with their children. So those seem to be the two hurdles that you have to get over. Am I right? I believe so, Your Honor. There's two points I would like to make to that. The first one is that a prisoner's constitutional rights are balanced against government interests. And that's the point of the Turner v. Safely decision by the Supreme Court. And the second point, I'm sorry. You're doing a good job, but I'd like to ask you about the six or eight-month whatever it was, deprivation of all contact visits. Was that what it was, all contact visits, or? The six- or eight-month time period was the elimination of all visits, contact and non-contact. All visits. Was that – I thought that that was by mistake. That is, it wasn't a policy or regulation, or it wasn't a judgment made as to this  So I'm not mistaken about that. For purposes of this stage, what do we have to assume? I don't believe why it happened is in the record. And for the purposes of this appeal, because it was dismissed on the PLRA screening, the facts should be found in favor of my client. Counsel, isn't there a – doesn't the record include a regulation indicating that the prior regulation precluded all visitation, all visitation, subject to an exception that the prison authorities could make? But wasn't that the substance of the regulation that was in place prior to the one that we're talking about now? And I thought – I thought there was an indication in the record that, as my colleague has suggested, that there may have been a mistaken reliance on that regulation that had been superseded at the time that the decision was made to preclude all visitation for him. Doesn't the record support that analysis? The record supports that there was a prison regulation, Section 3173.1, that was in place that allowed for the restriction of all visits. Right. And then that was amended in 2005 to only allow for the restriction of contact visits, and then the – my client was denied all visits in 2006. What the record doesn't show is whether the prison officials simply made a mistake or whether they did this on purpose or the reason behind it. The record doesn't show that. All right. Would you like to reserve the balance of your time? Yes, Your Honor. Thank you. Thanks. Good morning. Good morning. May it please the Court, Deputy Attorney General Neal Winn for CDCR. The CDCR's visiting policy does allow Shallowhorn to maintain a relationship with his kids. It allows him to have non-contact visits. It allows him to write letters to them. He can also maintain a relationship with them by phone. And also when they turn 18, all restrictions will be lifted. And the justifications for this policy are undoubtedly legitimate. The regulation is designed to strike a balance between allowing safe and healthy visitation in the visiting areas and to protect minors from harm in the same areas. Can you – where we sort of left off before on the period that when he initially arrived, he didn't get any visitation for a period of whether it was six to eight months, is what's in the record about that, why that occurred,  The period in question is from January 13, 2006, to January 8, 2007. And I calculated six months and three weeks. And on January 8, 2007, that's when a higher classification committee informed Shallowhorn that you will have non-contact visitation. As far as I can tell from the record, in giving Shallowhorn the benefit of the doubt, maybe prison officials did make a mistake. And I think there's a good explanation for that. The regulation was amended in 2005 by an emergency procedure. And there was a public hearing held in February 2006. After the public hearing and after the public comments were taken regarding the regulation, it was submitted to the Office of Administrative Law in April 2006, and it didn't get published until June 2006. So when the initial decision to deny Shallowhorn all contact visitation with his kids, that occurred on June 13, 2006. So it was within that time period where, you know, the regulation was being changed and finalized, and they were relying on the old or the superseded regulation. But that got fixed, because in October 2006, one of the officials on that original classification committee told Shallowhorn that, you know, it's temporary. We're doing further review. And ultimately, a higher classification committee relied on the correct regulation and then lifted the restriction. So at the time he came in under the old statute, you're classified by your crimes, as opposed to because he had three 187s and one involved a 16-year-old victim, that put him in a certain classification. That's correct. And so the presumption was that because you committed a murder involving a minor, the presumption is that we're going to give you noncontact visitation. But, counsel, before these regulations were put in place precluding or modifying visitation rights for prisoners convicted of certain crimes, he had a history of uneventful contact visits with his children, did he not, for some 7 or 8 years? Isn't that? When he first was incarcerated, the record indicates, I think, that he had years of contact visits. Isn't that correct? Correct. We'll take that allegation as true, and this is why the officials should get qualified immunity for that 6 months to 3 weeks. And the reason is that the duration is just too short to implicate the Constitution or to have any detrimental effect on the relationship between him and his kids. In fact, according to his own allegation, he had 8 years of access to them. So this little short interruption. So what if this period of absolutely no visitation at all had been a year or 18 months? Would that – are you suggesting that might make a difference in the constitutional analysis, that there was a deprivation of a right? No. And the reason why is because he did have access to maintain that relationship with his kids through other means. And what the Supreme Court noted in Overton is the inmates there had – could have communicated with their kids by mail, by telephone, and Shadowhorn had those availabilities or alternatives as well. And I do recognize that in Dunn and as well in Overton, that there is dicta that if the restriction is permanent or extreme, that it might raise constitutional concerns. But the Court doesn't have to go there because the regulation now does allow him to maintain that relationship. We say – we keep talking about all visits, but we're really talking about all visits with minor children. Is that correct? That's correct. The focus of Shadowhorn's appeal is just simply the opportunity to have contact visit with his kids, not any other minors. So his appeal is pretty narrow in that respect. No, but I'm just trying to make – when everybody talks about denial of all visits, it wasn't denial of visits with his wife or his mother or anything like that. Correct. He had unrestricted access to all adult visitors. Counsel, there's a suggestion, I think, in your briefing that there might be a mootness issue here in the sense you make the point that his children will soon be adults and may, in fact, be adults already, so he could have contact visits with them. What do you know as a factual matter, and maybe a posting counsel can address that, what the ages of the children are? I do. One second. In preparation for our argument, I pulled the visitor log and all the – and it contains each visitor who visited Shadowhorn since incarceration. And what I uncovered – and this is not in the record. I apologize. But what I uncovered is that he has – You're answering it because we're asking you to go outside the record. Correct. Yes. Thank you. So what I do know is that he has two daughters, one turned 18 on November 20th, 2006, and the other turned 18 on July 12th – I'm sorry, on May 22nd, 2008. And what I do know, according to the visitor log, is during the eight-year period that he claimed that he had access or unrestricted access to his kids, there is no record of any kid visiting him. He did – he does have a long history of visits from his mom, from his wife, and several other adults, but no history of any visits with his kids. And maybe Shadowhorn – So what you're saying is even though he wants those, his children don't seem to want to visit him? Yes. The first time – well, the first visit ever, according to our log, is in 2009. Thank you. And I do want to touch on Wolfchild real quick. Wolfchild did not cite a single prison condition case, and for good reasons. It just simply doesn't apply to the prison context. And we know that in the prison context, the right to association is the right – I'm sorry – among the rights least compatible with incarceration. And inmates like Shadowhorn should expect substantial restrictions on that right, even with family members, and that's straight out of Overton. And so I just want to make two closing remarks, unless the Court has further questions. The denial of access to a particular visitor and the denial of access to a particular form of visitation are well within the terms of confinement ordinarily contemplated by a prison sentence. And thus, the district court properly dismissed the complaint for failure to state a claim. Regarding subemptive due process, I do want the Court to pause before invoking subemptive due process. And the reason is that the standard for subemptive due process is whether the challenged government action shocks the conscience of Federal judges. And what the Supreme Court stated in Collins v. the City of Harker Heights is that the guideposts for responsible decision-making in this area are scarce and open-ended. So if there's a particular constitutional amendment on point, then the Court should use that particular amendment rather than the generalized notion of subemptive due process. Unless the Court has further questions, I'll submit it. Kagan. There do not appear to be additional questions. All right. Thank you for your argument. I'd just like to address a couple of points. The first is a statement that the right of a parent to have a relationship with their minor children was not eliminated because Mr. Shallahorn can have noncontact visits and phone visits. And I'd like to point the Court again to the Wolfchild case, where if that was the case, then this parole condition would have not violated that right. The counsel also pointed this Court to the Overton case. And the prison regulation at issue in Overton exempted the prisoner's own minor children, which would be something that my client would be looking for in this case. Counsel, could you address this issue about the age of the children? I mean, it seems to me that the government is suggesting that there may be a real moodness issue here. That wouldn't affect your claims with respect to that six-month period. I understand that. But to the extent that you are asking for any form of injunctive relief or declaratory relief with respect to what's going on now, no contact visits, the suggestion is that his children are all adults, and so there's no real live controversy here. That seems to me a pretty important issue. How do you respond to that? Well, those facts were not in the record. I was not able to brief those up because I did not have access to those facts. If this Court would like me to brief that up, I will do so. But there are exemptions to moodness. It could be capable of repetition, yet evading review, or other things that I haven't heard. Well, I don't think he's had any more kids since he's been in prison.  Prisoners can have kids while they're in prison. I'm pretty sure. No, I'm pretty sure they can't. Okay. Because they can't have conjugal visits anymore. So that's been gone for some time. So I think that there have been cases where people have wanted to send sperm and things like that, and they said, no, you can't do that. I would like to – I think this – the first point I'd like to make is that this should go back to the district court for findings on that fact. This was a PLRA screening. And so we are limited to the facts here. I would also like to address the qualified immunity issue on that same point, is that qualified immunity was not raised by the defendants. It's an affirmative defense. And the burden of proof in the Ninth Circuit is that the defendants have to prove that they're – they can receive qualified immunity, and it's a two-pronged test. But, counsel, the way – I mean, the way the screening works, as I understand it, I mean, the government doesn't even respond at all below. So your position is that even in that scenario, it would be inappropriate for us to evaluate the qualified immunity argument that's been raised by the government? Yes, Your Honor. I wasn't able to find any case in the district court or in the Ninth Circuit or in any other circuit where the qualified immunity issue was addressed during the PLRA screening. And if there are no further questions. All right. Thank you for your argument. This matter will stand submitted. And thank you again for your pro bono representation. The Court appreciates that of counsel.
judges: Schroeder, Lipez, Callahan